**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
**NORTHERN DIVISION**
**AT BALTIMORE**

| | |
|---|---|
| JACQUELINE MORTON, § <br> 8322 Poplar Mill Road § <br> Nottingham, Maryland 21236 § <br> § <br>     Plaintiff, § <br> § <br> v. § <br> § <br> HARTFORD LIFE AND ACCIDENT § <br> INSURANCE COMPANY, § <br> One Hartford Plaza § <br> Hartford, Connecticut 06155 § <br> § <br>     Defendant. § | Civil Action No. _____ |

**COMPLAINT FOR RECOVERY OF PLAN BENEFITS AND FOR THE ENFORCEMENT OF RIGHTS UNDER ERISA**

**COMES NOW**, Plaintiff Jacqueline Morton, and makes the following representations to the Court for the purpose of obtaining relief from Defendant's refusal to pay short-term disability benefits due under an employee benefits plan under ERISA, and for Defendant's other violations of the Employee Retirement Income Security Act of 1974 ("ERISA").

**JURISDICTION AND VENUE**

1. This Court's jurisdiction over the Plaintiff's claims for short term disability benefits is invoked under federal question jurisdiction pursuant to 28 U.S.C.

1

§ 1331 and under the express jurisdiction found in the ERISA statute under 29 U.S.C. § 1132(e) (ERISA § 5-2(e)).

2. Plaintiff's claims "relate to" an "employee welfare benefits plan" or "plans" as defined by ERISA, 29 U.S.C. § 1001 *et seq.*, and the subject disability benefit plans constitutes a "plan under ERISA."

3. The short-term disability payments in question are sourced from Hartford Life and Accident Insurance Company's group insurance policy number GRH 371107 for Johns Hopkins University and therefore fail to fit within the safe harbor provision exempting certain claims from ERISA.

4. The ERISA statute, at 29 U.S.C. § 1133, as well as Department of Labor regulations, at 29 C.F.R. § 2569.503-1 provide a mechanism for administrative or internal appeal of benefits denials.

5. In this case, the aforementioned avenues of appeal have been exhausted and this matter is now properly before this court for judicial review.

6. Venue is proper within the District of Maryland pursuant to 29 U.S.C. § 1132(e)(2).

## PARTIES

7. Plaintiff, Jacqueline Morton (hereinafter "Plaintiff"), was at all relevant times, a resident of Nottingham, County of Baltimore, State of Maryland.

8. The Plaintiff was employed by John Hopkins University.

9. Plaintiff alleges upon information and belief that the Group Short Term Disability Plan for Employees of Johns Hopkins University (hereinafter "Plan") is, and at all relevant times was, an "employee welfare benefit plan" as defined by ERISA and/or the short-term disability payments in question are sourced from Hartford Life and Accident Insurance Company's group insurance policy number GRH 371107 (hereinafter "Policy") for Johns Hopkins University and therefore fail to fit within the safe harbor provision exempting certain claims from ERISA.

10. The Plan provides eligible employees with disability income protection as defined by the Plan and/or Policy.

11. Plaintiff alleges upon information and belief that John Hopkins University is the Plan Sponsor and Plan Administrator of the short-term disability Plan.

12. Hartford Life and Accident Insurance Company (hereinafter "Hartford") is the party obligated to pay benefits and to determine eligibility for benefits under the Plan and/or Policy.

13. Hartford is the underwriter for Group Policy Number GRH 371107.

14. Hartford is an insurance company authorized to transact the business of insurance in this State, and may be served with process at its home office at located at One Hartford Plaza, Hartford, Connecticut 06155.

## FACTS

15. Defendant Hartford was the entity responsible for processing claims and adjudicating appeals regarding short-term disability benefits under the Plan and/or Policy.

16. The short-term disability Plan is fully insured by Hartford under Group Policy Number GRH 371107.

17. The Plaintiff timely filed an application for benefits under the Plan and/or Policy, was subsequently denied benefits, Plaintiff timely appealed, and Hartford issued its final denial on February 26, 2021.

18. The Plaintiff was employed as a Budget Specialist for John Hopkins University since January 24, 2003, at its location at 3400 N. Charles Street, Baltimore, Maryland 21218, and as such, Plaintiff was thereby a participant or beneficiary of the Plan, and is covered by the policy that provides benefits under the Plan.

19. The Plaintiff ceased work on or about July 15, 2020, due to a disability while covered under the Plan and/or Policy.

20. The Plaintiff was disabled and eligible for short-term disability benefits from July 15, 2020 to January 14, 2021 as defined by the provisions of the Plan.

21. In accordance with the review procedures set forth in the Plan, 29 U.S.C. §

1133, and 29 C.F.R. § 2560.503-1, Plaintiff appealed the claim until exhausting the required plan appeals.

22. Having submitted her appeal, and as confirmed by Hartford, Plaintiff exhausted her administrative remedies.

23. Based on the terms of the insurance policy, Plaintiff's complaint is timely and is not otherwise time barred.

24. The relevant short-term disability Policy in this matter initially defines total disability as an inability to perform the essential duties of Plaintiff's occupation, and as a result, Plaintiff is earning 20% or less of her pre-disability earnings.

25. Plaintiff is entitled to short term disability benefits as he has met the short-term disability Plan's and/or Policy's requirements, and her disability prevent her from performing the essential duties of her own occupation as defined in the policy from July 15, 2020 to January 14, 2021.

26. If disabled pursuant to the terms of the policy, Plaintiff, who had a monthly income of $4,638.00, who was paid no short-term disability benefits, was entitled to short-term disability benefits from July 15, 2020 to January 14, 2021, her monthly gross short-term disability benefit was $3,710.40, with no applicable offsets and with no overpayment owed, such that she is entitled a total short-term disability benefit of $22,138.72 (using 3.5% to

calculate net present value).

27. Evidence submitted by Plaintiff to Hartford supporting her disability includes, *inter alia*, the following: Plaintiff had a history of anxiety and depression which was exacerbated with the passing of her son a few years prior; during her present illness Plaintiff suffered anxiety and depression and attendant migraine headaches which caused her to make multiple errors at work, induced a weight loss of 20 pounds, required counseling once a week, along with polypharmacy; on July 16, 2020, Christopher Zajac, M.D., took her out of work due to anxiety and depression symptoms; Dr. Zajac had taken Plaintiff out of work on multiple prior occasions due to the same medical conditions; an August 31, 2021 mental status examination performed by Beverly Tellis, LCSW-C, indicated impairment in attention, concentration and memory; on November 18, 2020, Daniel J. Safer, M.D., indicated Plaintiff had a diagnosis of anxiety disorder unspecified and suffered symptoms of panic episodes, insomnia and obsessive-compulsive disorder; on November 19, 2020 and January 20, 2021, Beverly Tellis, LCSW-C, stated Plaintiff suffered from major depression (recurrent) and an anxiety disorder and experienced difficulty concentrating, irritability, fatigue, sleep and eating problems, and said these issues would preclude employment until January or February 2021.

28. Job preclusive vocational limitations include, *inter alia*, needing additional, unscheduled work breaks, chronic absenteeism, and being off task more than 10% of the work period. *Johnson v. Saul*, 2019 WL 6876012, at *3 (E.D. Mo., 2019); *Ricardo C. v. Saul*, 2019 WL 4034484, at *2 (N.D. Ill., 2019); *Hicks v. Commissioner of Social Security*, 2016 WL 2605234, at *4 (E.D. Mich., 2016); *Mershad v. Commissioner of Social Security*, 2016 WL 659307, at *12 (S.D. Ohio, 2016); *Coffman v. Commissioner of Social Security*, 2015 WL 9311522, at *3 (E.D. Mich., 2015); *Williams v. Commissioner of Social Sec.*, 2013 WL 3771381, at *6 (E.D. Mich., 2013).

29. An ability to perform the essential duties of any fulltime occupation requires reliability, consistency, substantial capacity, psychological stability, and steady attendance. *Rhines v. Harris*, 634 F.2d 1076, 1079 (8th Cir. 1980); *Tippitt v. Reliance Std. Life Ins. Co.*, 457 F.3d 1227, 1236 (11th Cir. 2006); *McIntyre-Handy v. APAC Customer Services, Inc.*, 2005 WL 5369158, *6 (E.D. Va. 2005); *Tyndall v. Nat'l Educ. Centers, Inc. of California*, 31 F.3d 209, 213 (4th Cir. 1994).

30. Hartford relied on medical consultants for file reviews during the administrative appeal of Plaintiff's disability claim and said consultants opined, *inter alia*, that Plaintiff had minor impairments which had no meaningful impact on her functionality without addressing her work

7

reliability, consistency, substantial capacity and steady attendance and dismissed her subjective complaints.

31. Hartford relied, *inter alia*, on third party vendors, including Professional Disability Associates (Erika P. Dudley, M.D.), to conduct medical file reviews.

32. Dr. Dudley's December 8, 2020, report stated negative emotions only reach the level of impairment when such emotions negatively impact cognitive abilities. Dr. Dudley admitted that functional impairment can be reflected in mental status exams ("MSE") and further admitted that an August 31, 2021 MSE indicated impairment in attention, concentration and memory. However, Dr. Dudley dismissed the data as being self-reported. In a subsequent January 21, 2021, report, Dr. Dudley indicated the medical evidence failed to demonstrate Plaintiff's psychiatric symptoms caused any functional impairments.

33. Professional Disability Associates ("PDA") has had a website which revealed that it advertises and solicits business from insurers, reinsurers and third-party administrators based upon a promise of providing "assessment of disability claims" which will "reduce to manageable proportions the seemingly infinite specter of exposure such claims carry." Further, PDA requests a "long term relationship" with such insurers, reinsurers and third-

party administrators. *See*, *e.g.*, *Browning v. Ohio Valley Electric Corporation Long-Term Disability Income Policy*, Case No. 3:06-0861 (S.D.W. Va.). PDA has also indicated on its website that "7 of the top 10 disability insurers in America are current clients." PDA was founded by Donald W. Abbott, M.D., who as the medical director at Unum for 8 years before leaving in 2000.

34. There are no challenges to Plaintiff's credibility. In other words, Plaintiff's treating physicians have directly addressed her reliability, consistency, substantial capacity, psychological stability and steady attendance. Hartford's medical consultants have failed to substantively account for, much less address, any of these issues. Additionally, the claim Plaintiff could work as a Budge Analyst with impairments to attention, concentration and memory 8 hours a day, 40 hours a week, month in and month out, is simply unreasonable and not believable. Accordingly, Plaintiff has satisfied her obligations of providing proof of his physical disability under the policy.

35. Hartford's medical consultants ignored and dismissed Plaintiff's subjective complaints. Ignoring evidence of pain or other disabling conditions because it is subjective is arbitrary and capricious. *Miles v. Prudential Life Insurance Co.*, 720 F.3d 472, 486 (2d Cir. 2013).

36. There is no requirement in the instant Policy that Plaintiff provide *only* objective medical evidence or other objective indica of disability. Since the Policy does not say it, Hartford does not have the authority to require it. *See*, *e.g.*, 29 U.S.C. § 1104(a)(1)(d); *Fifth Third Bancorp. v. Dudenhoeffer*, 134 S.Ct. 2459, 2468 (2014), *Salomaa v. Honda*, 642 F.3d 666, 678 (9th Cir. 2011); *Carradine v. Barnhart,* 360 F.3d 751,755 (7th Cir. 2004); *Abdullah v. Accentcare Long Term Disability Plan*, 2012 WL 4112291 *11 (N.D. Cal); *Krupp v. Liberty Life Assurance Company of Boston*, 936 F.Supp.2d 908, 917 (N.D. Ill. 2013).

37. The instant Plan and/or Policy allows for independent medical examinations and functional capacity examinations. Hartford failed to conduct any such examinations. All Hartford's opinions come from file reviews. Non-examining evidence has little value in evaluating pain, fatigue or impaired focus, concentration or cognition. *See*, *e.g.*, *Kalish v. Liberty Mutual*, 419 F. 3d 501, 508 (6th Cir. 2005); *Calvert v. Firstar Finance, Inc.*, 409 F. 3d 286, 295 (6th Cir. 2005); *Smith v. Aetna*, 312 F. Supp. 2d 942, 954 (S.D. Ohio 2004); *Meyer v. MetLife*, 341 F. Supp. 2d 865 (S.D. Ohio 2004); *Black v. Unum Life Insurance Company of America*, 324 F. Supp. 2d 206, 215 fn.8 (D. Me. 2004).

38. The Plaintiff has now exhausted her required administrative remedies for her short-term disability benefits under the Plan and/or Policy pursuant to ERISA or such administrative remedies are deemed exhausted and/or her short-term disability benefits are deemed denied.

39. The Court's standard of review for the ERISA claims is *de novo* under *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989).

40. The entity that chose to deny short term disability benefits would pay any such benefits due out of its own funds.

41. Defendant Hartford was a claims decision-maker under a perpetual conflict of interest because the short-term disability benefits would have been paid out of its own funds.

42. Defendant Hartford allowed its concern over its own funds to influence its decision-making.

43. Defendant has acted under a policy to take advantage of the potential applicability of ERISA to claims.

44. Defendant's administrative process did not provide Plaintiff with a full and fair review; by way of example, its denial letters did not contain the specific reasons for the denial and did not advise Plaintiff of the information Defendant required in order to approve her benefits.

45. The disability insurance policy does *not* provide Hartford with discretionary authority.

46. In the alternative, relevant state law bans any such clause purporting to confer Hartford with discretionary authority.

47. At all times relative hereto, Hartford has been operating under an inherent and structural conflict of interest because any monthly benefits paid to Plaintiff are paid from Hartford's own assets with each payment depleting those same assets.

48. Hartford has a history of biased claims administration. For example, in a case entitled *Julie Jacoby v. Hartford Life and Accident Insurance Company*, 07-cv-4627 (S.D. N.Y.), the court put down an order indicating Hartford's discovery "responses are a paradigm of discovery abuse" and required Hartford produce its BMS Claims Manual and SIU Reference Manual along with other documents without any protective order at all such that these documents are now properly part of the public domain and have been utilized in other litigation. These materials evidence a specific intent on Hartford's part to consider the monetary value of a claim in its evaluation process. This is an intent antithetical to its role as fiduciary to its disabled constituents. In one of the documents a Hartford employee admonishes another to try to do something else on a claim before Hartford

has to pay 30 years of benefits. In another document a member of the medical team is praised for finding that a disability claimant could do some type of work in a higher percentage of cases than her peer group.

49. As the party obligated to pay benefits and the administrator given discretion in construing and applying the provisions of the disability plan and assessing Plaintiff's entitlement to benefits, Hartford is an ERISA fiduciary.

50. Hartford, as an ERISA fiduciary, will have to show it exercised care, skill, prudence, diligence, and loyalty solely for the benefit of Plaintiff like that borne by a trustee under common law. *See* § 1002(21)(A)(i) and (iii); *Aetna Health Inc. v. Davila*, 542 U.S. 200, 220, 124 S. Ct. 2488, 2502 (2004); *Mondry v. Am. Fam. Mut. Ins. Co.*, 557 F.3d 781, 803 (7th Cir.), *cert. denied*, 130 S. Ct. 200 (2009).

51. Hartford failed to satisfy its duties under ERISA as specified in paragraph 50 of this complaint.

52. Under ERISA, a fiduciary should fully investigate the relevant and applicable facts of any claim.

53. Hartford failed to satisfy its duties under ERISA as specified in paragraph 52 of this complaint.

54. Under ERISA, a fiduciary should fairly consider all information obtained regarding a claim, including that which tends to favor claim payment or

continuation as well as that which tends to favor claim declination or termination.

55. Hartford failed to satisfy its duties under ERISA as specified in paragraph 54 of this complaint.

56. Under ERISA, a fiduciary should consider the interests of its insured at least equal to its own and to resolve undeterminable issues in its insured's favor.

57. Hartford failed to satisfy its duties under ERISA as specified in paragraph 56 of this complaint.

58. Under ERISA, a fiduciary has the obligation to read, interpret and understand all of the pertinent medical information with sufficient clarity so as to be able to make a fair, objective and thorough evaluation of its insured's claims for disability benefits.

59. Hartford failed to satisfy its duties under ERISA as specified in paragraph 58 of this complaint.

60. Under ERISA, a fiduciary's denial of a claim should not be based on speculation.

61. Hartford failed to satisfy its duties under ERISA as specified in paragraph 60 of this complaint.

62. Under ERISA, a fiduciary should be objective in its assessment of facts and not attempt to bias the claims investigation process in any manner.

63. Hartford failed to satisfy its duties under ERISA as specified in paragraph 62 of this complaint.

64. Under ERISA, a fiduciary should not take into consideration the amount of money it would save if a particular claim or set of claims is denied, terminated, or otherwise not paid.

65. Hartford failed to satisfy its duties under ERISA as specified in paragraph 64 of this complaint.

66. Under ERISA, a fiduciary should refrain from excessive reliance on in-house medical staff to support the denial, termination, or reduction of benefits.

67. Hartford failed to satisfy its duties under ERISA as specified in paragraph 66 of this complaint.

68. Under ERISA, a fiduciary should not conduct unfair evaluation and interpretation of attending physicians' or independent medical examiners' reports.

69. Hartford failed to satisfy its duties under ERISA as specified in paragraph 68 of this complaint.

70. Under ERISA, a fiduciary should evaluate the totality of its insured's medical conditions.

71. Hartford failed to satisfy its duties under ERISA as specified in paragraph 70 of this complaint.

72. Under ERISA, a fiduciary has an obligation to conduct a fair, thorough, and objective review.

73. Hartford failed to satisfy its duties under ERISA as specified in paragraph 72 of this complaint.

## CAUSE OF ACTION
## FOR PLAN BENEFITS AGAINST ALL DEFENDANTS
## PURSUANT TO 29 U.S.C. § 1132(a)(1)(B)

**PLAINTIFF** incorporates all the allegations contained in paragraphs 1 through 73 as if fully stated herein and says further that:

74. Under the terms of the Plan and/or Policy, Defendant agreed to provide Plaintiff with short term disability benefits in the event that Plaintiff became disabled as defined in the Plan and/or Policy.

75. Plaintiff was disabled for a period of time under the terms of the Plan and/or Policy.

76. Defendant failed to provide benefits due under the Plan and/or policy, and this denial of benefits to Plaintiff constitutes a breach of the Plan and/or Policy.

77. The decision to deny benefits was wrong under the terms of the Plan and/or Policy.

78. The decision to deny benefits and decision-making process were arbitrary and capricious.

79. The decision to deny benefits was not supported by substantial evidence in the record.

80. The decision-making process did not provide a reasonable opportunity to the Plaintiff for a full and fair review of the decision denying the claims, as is required by 29 U.S.C. § 1133 and 29 C.F.R. 2560.503-1.

81. The appellate procedures did not provide the Plaintiff a full and fair review.

82. As an ERISA fiduciary, the Defendant owed the Plaintiff fiduciary duties, such as an obligation of good faith and fair dealing, full and complete information, and a decision-making process free of influence by self-interest.

83. The Defendant violated the fiduciary duties owed to the Plaintiff.

84. As a direct and proximate result of the aforementioned conduct of the Defendant in failing to provide benefits for Plaintiff's disability and in failing to provide a full and fair review of the decision to deny benefits, Plaintiff has been damaged in the amount equal to the amount of benefits to which Plaintiff would have been entitled to under the Plan and/or Policy.

85. As a direct and proximate result of the aforementioned conduct of the Defendants in failing to provide benefits for Plaintiff's disability, Plaintiff has suffered, and will continue to suffer in the future, damages under the Plan, plus interest and other damages, for a total amount to be determined.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that this Court grant her the following relief in this case:

1. A finding in favor of Plaintiff against Defendant;

2. Damages in the amount equal to the disability income benefits to which she was entitled through date of judgment, for unpaid benefits pursuant to 29 U.S.C. § 1132(a)(1)(B);

3. Prejudgment and postjudgment interest;

4. Plaintiff's reasonable attorney fees and costs; and,

5. Such other relief as this Court deems just and proper.

Dated this 11th day of August, 2022.

BY: */s/ D. Seth Holliday*
D. Seth Holliday
Maryland Federal Bar ID 30262
**MCMAHAN LAW FIRM, LLC**
700 S. Thornton Avenue
P.O. Box 1607
Dalton, Georgia 30722
(706) 217-6118
sholliday@mcmahanfirm.com
*Attorneys for Plaintiff*